Richardson J.,
dissenting. If the verdict should be justified by the refusal of a new trial, the plaintiff is estopped forever. But to my understanding the plaintiff had a clear case, in itself obscured only by the introduction of matter foreign to its simple merits. I am to prove this from the law and the facts.
1st. A ferry is a personal franchise, to carry travellers across a river, or other water, from the terminus of a public road on the one side, to the terminus of a road on the other side. The ferry is to connect the two termini, and thus unite the two roads into one highway. The ferry is but a part of this highway. Ferries are called common highways, in the books:—for this definition, see title, Ferry, in Jacob’s, or any other Law Dictionary. The point to be observed is, that the ferry has no legal or necessary connexion with the lands, other than with the roads it so unites. The lands adjacent may belong to A. and the ferry to B., and the water may belong to C., subject only to the franchise of the ferry. (See the same authorities for instances.) It is precisely the same as a public road running through lands—the title is in the freeholder, subject to the public use for a road. The ferry is that road extended across the water. In the case of Gourdin v. Davis and Lehre, Bail., 466, this is plainly laid down. The defendants had leased the ferry of Gourdin, and then purchased the ferry landings,—just as the defendant Garner purchased the adjacent lands in the *523 present instance. But it was decided that Davis and Lehre acquired no right to the ferry, by their purchase: they were still the tenants of Gourdin, as to the ferry, which was as atoll bridge; although both ferries and toll bridges are commonly chartered to the adjacent freeholder, which is convenient and just. So in the case before us; the defendant Garner purchased the ferry lands—so called,—but not the ferry itself. Still, in point of fact, Garner is found in possession of the ferry, claiming it under Thomas Garner, who seems to have claimed it under Sarah Garner, who had devised the ferry tract of land; not the ferry—to Thomas. Thomas, no doubt, like Gilbert, the defendant, and like Davis and Lehre, supposed the ferry had passed with the land. But this being a clear mistake, what avails the doctrine of covenants running with the land? Assuredly it has no application, although no doubt, it led the defendant to disregard Sarah Garner’s contract with Morse. Thus by imputing to himself the unincumbered ownership of the ferry, when he purchased, and as Morse’s exemption from toll was a mere personal covenant, the defendant supposed it availed not against him, G. Garner, now become the purchaser of the land, and incidentally of the ferry. But this being a mistake, how stands the case, when thus disencumbered? It is plainly this:—Sarah Garner was the owner of the franchise of the ferry, and happened to own the lands. Both parties claim under her. Morse purchased of her the right of passing toll free, as in the common case of a purchase to pass toll free during life, which is binding, as other mere personal contracts. No doubt of this. But Morse finds Gilbert Garner in possession of the ferry. Garner at first concedes, but presently denies his right to pass toll free; but upon what legal ground he did this, does not appear, except upon the aforesaid error. No other has been urged. But Sarah Garner could justify no such denial of Morse’s right. And Gilbert Garner, a mere volunteer’, or tenant, or executor, perhaps, can stand in no better right than Sarah. But to make the case too simple for question, he conceded Morse’s right to pass toll free up to February ’45, when having purchased the ferry lands, he concludes, like Davis and Lehre, (it is the very principle overruled in that case) *524 that the ferry was inseparable from the lands. Upon this, his defence rests, and nothing else. But this being taken from the defendant, he cannot defend himself by saying he is not the legal owner. It is enough that he occupied the ferry, assuming to be the owner, and obstructed Morse’s right of passing. This is also a decided point, and essential to all travellers, who must look to the actual incumbent.
On the subject of a want of notice of Morse’s contract, if it could have availed—that is not pretended, and the converse actually appears. But the defendant simply intrenches himself behind his freehold in adjoining lands. Morse’s right could not have been enhanced if he had purchased the very lands, and the defendant has but the same law. What then is the true legal position of Gilbert Garner? It is this: he has taken possession of the personal estate of Sarah Garner—i. e., her franchise oi this ferry: he is therefore her executor in his own wrong: or a volunteer, or a tenant: let him have choice; but no such man can be in a better situation than Sarah Garner herself. But admit that his true legal position was lost sight of -in the misconception about covenants real, at the trial, and that it would be important to know how the defendant really stood; because he may still, by some other title, be the true owner of the ferry; and it might be, that Morse’s exemption does not bind him in his new character of the owner. If so, assuredly, justice to both parties calls for a further investigation. For it is plain that counsel, and thence it follows, that both the Court and jury adjudicated the case under mistaken impressions of its proper law. It has been truly a mis-trial, and ought to be reconsidered without prejudice. A verdict so obtained ought not to operate as an estoppel of Morse’s right forever. Had there been a non-suit merely, which is no legal bar, it would have been at our discretion. But not so where there is a final adjudication by verdict.